## In re Morgan's Will.

*March 19 — April 9, 1901.*

*Wills: Probate: Undue influence: Evidence.*

Testatrix, eighty-four years of age when she executed the will in question, lived with her daughter, to whom she left the greater part of her estate, except small legacies to the contestants, children of a deceased son, and a considerable legacy to another son. She lived about four years after making the will, and before and thereafter attended to the greater part of her business. The will was properly executed at the home of a distant relative of the daughter's husband, neither she nor her husband being in the room at the time, though in the house; and after being signed, it was left on the table until taken by the son-in-law. Prior to its execution testatrix made declarations that the paper was her will, put in form by her son-in-law and then copied by her. She was then in good spirits, and took a lively interest in everything about her. with nothing to indicate she did not fully realize the importance of her action. There was evidence of her declarations that she intended her daughter to have the largest share of her estate, that she had promised her son not to make any will, and that by subsequent declarations she was fully conscious of having made the will. There was conflicting evidence as to her mental capacity. In a contest over the probate of such will findings that the will was not invalid because of the undue influence of the daughter are *held* not against the clear preponderance of the evidence.

APPEAL from a judgment of the circuit court for Rock county: B. F. DUNWIDDIE, Circuit Judge. *Affirmed.*

Proceedings to contest the probate of a will. The testatrix, Rebecca Morgan, was eighty-four years of age at the time she made her will, and was living with her daughter, *Charlotte M. Goodrich.* The evidence tended to show the following: Mrs. Morgan turned naturally and successfully to her daughter for a home and care in her old age. She had several grown-up grandchildren with whom she associated very little during the years immediately preceding the making of the will. She had a son, William, living near by. The will purported to finally dispose of her entire possessions, consisting of about $12,000 in value. She gave to the grandchildren and their mother $100 each. She divided the balance of her property into three parts, giving one third to her son William, and the residue to her daughter *Mrs. Goodrich.* The testatrix had strong affection for all of her children and grandchildren, but the daughter, *Charlotte,* was her main dependence for care in her old age, and she so regarded her situation at the time the will was made and for a considerable period preceding that event. She lived about four years after the will was made. She attended in whole or in part to her own business prior to the making of the will and thereafter. The will was executed at the house of W. H. Greenman, a distant relative of Ezra Goodrich, husband of *Charlotte M. Goodrich,* where the Goodriches and testatrix went by invitation. The home of the Greenman family was situated about three miles from that of the Goodrich family. The instrument was drafted by Ezra Goodrich and copied by Mrs. Morgan. It was taken by Mr. Goodrich to the place of execution. It was there produced and handed to Mrs. Morgan. Neither Mr. nor *Mrs. Goodrich* was in the room when the instrument was executed. Mrs. Morgan announced that the paper was her will and that it had been put in form for execution by Mr.

Goodrich and then copied by her.   The only persons present at the time, besides the testatrix, were Mr. and Mrs. Greenman and Mrs. Greenman's mother.   Mrs. Morgan placed the instrument on the table and signed it in a firm hand for a person of her age, though the writing does not indicate as much deliberation as her writing in the body of the instrument.   There was no indication but that she fully realized the importance of her action.   The witnesses signed the instrument at her request, each signing in the presence of the other and in the presence of the testatrix.   The paper was then left on the table and was subsequently taken by Mr. Goodrich.   Mr. Goodrich and his wife each made a will on the same occasion.   In the will of the latter the grandchildren were provided for.   Prior to the execution of the will the testatrix made some declarations to the effect that she intended the greater part of her property for *Mrs. Goodrich*, and at other times indicated that all her children would be treated alike.   On the day the will was executed she was in good spirits and took a lively interest in everything about her, indicating clear mental conceptions of everything that came under her observation and would naturally interest a person circumstanced as she was if in a normal condition. She was in fair health for a person of her age.   The son William did not want his mother to make a will.   He importuned her not to do so, and she said she would not.   Such occurrences took place after the will was in fact made. Nothwithstanding declarations of the testatrix as indicated, she made other declarations indicating full consciousness of the fact that she had made a will.   There was considerable opinion evidence that the testatrix was not of sound and disposing mind when the will was made, based mostly on indications of momentary forgetfulness, inability to intelligently place value upon property, and childishness.   There was opposing opinion evidence, and evidence of many facts indi-

In re Morgan's Will.

cating mental soundness of the testatrix both before and after the will was made.

The cause was submitted to a jury for an advisory verdict, which resulted in findings of fact in favor of the validity of the will. The trial court adopted such findings and judgment was rendered accordingly.

For the appellants there were briefs by *John Cunningham* and *Smith & Pierce*, and oral argument by *Mr. Cunningham* and *Mr. William Smith.*

*E. D. McGowan,* attorney, and *M. G. Jeffris,* of counsel, for the respondent.

MARSHALL, J. An examination of the record satisfies us that the lower court was guided throughout the trial of this case by correct rules of law in weighing the evidence and deciding the issues of fact. There is no serious contention to the contrary, but it is insisted that the findings are against the clear preponderance of the evidence, especially on the issue of whether the chief beneficiary, *Charlotte M. Goodrich,* and her husband were so far instrumental in causing the will to be made that it was not the expression of the mind of the testatrix. It seems that we would not be justified in reviewing the evidence in detail in this opinion, by pointing out or quoting in substance those parts thereof that support the findings so as to demonstrate their correctness, and that they are sufficiently supported to at least preclude any disturbance thereof under the rules as to the status of such findings in this court. The principles to be kept in view in weighing evidence of the character produced in this case, and the probative force of particular circumstances which such evidence tends to establish, have been so many times considered that it is useless to attempt to add anything new that will be of value to the profession or the courts. So there is no call for us to say more than to announce the conclusion that has been arrived at, namely,

that the record does not show that the findings of fact are against the clear preponderance of the evidence, hence that the judgment must be affirmed.

*By the Court.*— So ordered.

A motion by appellants to modify judgment and mandate so as to direct that statutory costs of appellants and respondents be paid out of the estate was denied May 21, 1901.